IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| PHL VARIABLE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>2008 CHRISTA JOSEPH IRREVOCABLE TRUST, by and through its trustee, BNC NATIONAL BANK,<br><br>        Defendant. | CIVIL NO. _____<br><br>**ORIGINAL COMPLAINT** |

PHL Variable Insurance Company ("Phoenix"), by and through its attorneys, files this Original Complaint against the 2008 Christa Joseph Irrevocable Trust (the "Joseph Trust" or "Defendant"), by and through its trustee, BNC National Bank ("BNC"), as follows:

## I.    THE PARTIES

1.

PHL Variable Insurance Company is a Connecticut insurance company authorized to transact the business of insurance in Minnesota. Phoenix is organized under the laws of Connecticut and its principal place of business is located in Hartford, Connecticut. Phoenix's headquarters are located at One American Row, Hartford, Connecticut 06102-5056. Phoenix's high level officers direct, control, and coordinate the corporation's activities from Hartford, Connecticut. Phoenix is a citizen of Connecticut within the meaning and intent of 28 U.S.C. § 1332.

2.

Upon information and belief, the 2008 Christa Joseph Irrevocable Trust is a trust organized under the laws of Minnesota and may be served through its trustee, BNC National Bank. Upon information and belief, BNC is a national bank with several branch offices in Minnesota. BNC may be served at 333 S. Seventh St. Suite 150, Minneapolis, Minnesota 55402 or by serving its chief executive officer, Gregory K. Cleveland, at 2425 East Camelback Road, Suite 100, Phoenix, Arizona 85016. Upon information and belief, BNC is the sole trustee of the Joseph Trust.

## II.   JURISDICTION AND VENUE

3.

This suit presents a case of actual controversy within the diversity jurisdiction of this Court.

4.

Phoenix is a citizen of the State of Connecticut within the meaning and intent of 28 U.S.C. § 1332.

5.

BNC is subject to the jurisdiction of the Court. Upon information and belief, BNC is a national bank with its principal office in Arizona.

6.

This Court has diversity jurisdiction over this action, as Phoenix, on the one hand, and BNC, on the other hand, are situated in and citizens of different states and, as set out more fully below, the amount in controversy exceeds $75,000, exclusive of interest,

attorneys' fees, and costs.  Therefore, this Court has jurisdiction by virtue of 28 U.S.C. § 1332.

7.

This Court has jurisdiction over this declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, which grant the United States District Courts jurisdiction to declare the "rights and other legal relations of any interested party making such declaration, whether or not further relief is or could be sought."

8.

Venue is proper for this action.  Among other things, the situs of the Joseph Trust is in Minnesota, BNC operates branch offices in Minnesota, and the insurance policy at issue was procured in Minnesota and is governed by Minnesota law.  In addition, all or a portion of the events giving rise to the cause asserted herein occurred in the State of Minnesota.

### III.   INTRODUCTION

9.

This is a declaratory judgment action brought against the 2008 Christa Joseph Irrevocable Trust seeking a declaration that the policy of life insurance bearing the number 97529709 is null, void and rescinded *ab initio* due to the fraudulent, willfully false and/or material misrepresentations and omissions that Christa Joseph and the 2008 Christa Joseph Irrevocable Trust made on their life insurance application.  This action, seeking rescission of the above described life insurance policy, is brought pursuant to the Federal Declaratory Judgment Statute, 28 U.S.C. § 2201.

10.

In recent years, a derivative market for life insurance has developed in which existing life insurance policies are sold to third parties who lack an insurable interest in the life of the insured. Typically referred to as a "life settlement" or "senior settlement," these sales are generally lawful, assuming that the policy was procured for legitimate purposes and that there was an insurable interest at the policy's inception.

11.

As this derivative market has developed however, there has been a proliferation of life insurance policies that are not sought for legitimate insurance needs, but rather for resale to strangers on the secondary market. Policies procured under these circumstances have become known as stranger originated (or stranger owned) life insurance ("SOLI") policies. SOLI policies are illegal wagering contracts that lack an insurable interest at inception. As such, SOLI policies are void *ab initio*.

12.

In many cases, SOLI policies are initiated with material or fraudulent misrepresentations in the insurance application. Insurers, in an effort to prevent issuing SOLI policies, require insurance applicants and insurance agents to respond to specific questions during the application process regarding the purpose of the insurance sought. SOLI promoters and participants will answer these questions falsely in order to obtain the insurance sought. Additionally, in order to maximize their profit, SOLI promoters and participants frequently provide insurers with false information regarding an insured's financial status in order to obtain a policy with a larger face amount.

13.

SOLI schemes have become so prevalent that they have been the subject of numerous enforcement actions by the Minnesota Department of Commerce.[1]  SOLI schemes have also been specifically prohibited by statute in Minnesota.  *See* MINN. STAT. ANN. 60A.078, et seq.

14.

The policy at issue in this case was procured from Phoenix in furtherance of a SOLI scheme.  In doing so, Christa Joseph and the Joseph Trust made fraudulent, willfully false and/or material financial misrepresentations and omissions relating to Christa Joseph's need for the policy, the purpose of the policy, the intent for investors to obtain an interest in the policy, and Christa Joseph's net worth and income.

15.

Phoenix brings this action for rescission of the policy and order declaring the policy void *ab initio*.

### IV. FACTUAL BACKGROUND

16.

Phoenix is, and during all relevant times has been, in the business of underwriting and issuing policies of life insurance and is authorized to transact the business of

---

[1]  *See*, *e.g.*, *In re Matter of the Resident Insurance Producer License of Michael J. Antonello and the Resident insurance Agency License of Wealth Management Advisors, LLC.,* Minn. Off. Admin. Hrgs., Docket No. 4-1004-20470-2, May 14, 2009, *available at* http://www.commerce.state.mn.us/consent/410.PDF and http://www.commerce.state.mn.us/consent/AntonelloConsentOrder12-2-09.pdf.

insurance in the State of Minnesota.

17.

On or about June 17, 2008, the Joseph Trust, by and through its trustee, applied in writing to Phoenix (the "Application") seeking the issuance of an insurance policy insuring the life of Christa Joseph ("Joseph").

18.

In completing the Application, Joseph and the Joseph Trust provided Phoenix with material information regarding, among other things, Joseph's net worth and income. In completing the Application, Joseph and the Joseph Trust knew that each was required to provide complete, accurate and honest answers to the questions presented on the Application. Joseph and the Joseph Trust also knew that Phoenix would rely upon the answers recorded on the Application in determining whether Joseph was insurable and qualified for the insurance sought through the Application.

19.

Joseph and the Joseph Trust, through its trustee, responded to clear, direct questions seeking material information regarding Joseph's net worth and annual income. In response to these questions, the Application represented that Joseph had a net worth of $11,906,000 and other income of $497,000. As discussed more fully in the ensuing paragraphs, these representations were false and were each material to Phoenix's acceptance of the risk assumed.

20.

In addition to seeking information on Joseph's net worth and income, the Application required Joseph and the Joseph Trust to provide material information regarding, among other things, the purpose of the insurance, whether the policy was being purchased in connection with any program under which the proposed insured had been advised of the opportunity to transfer the policy within five years of its issuance or whether there was any intent or understanding that a third-party would obtain an interest in the policy. In response to these questions, the Application represented that the life insurance was being sought for estate planning purposes, that the policy was not being purchased with the intent of being transferred within the first five years of its issuance and that there was no understanding that the policy would be sold and/or transferred to a third-party.[2] As discussed more fully in the ensuing paragraphs, each of these representations was false and was intended to be relied upon by Phoenix when issuing the applied–for policy.

---

[2] Specifically, questions 10, 11, 14 and 15 of Part I Section XI of the Application were answered falsely.

21.

The Application contained the following affirmation:

> I have reviewed this application, and the statements made herein are those of the proposed insured and all such statements made by the proposed insured in Part I or and in Part II of this application are full, complete, and true to the best knowledge and belief of the undersigned and have been correctly recorded.

Joseph and the Joseph Trust, through its trustee at the time, executed the Application on or about June 17, 2008.

22.

On the basis of the statements and representations contained on the Application and in reliance upon Joseph's and the Joseph Trust's complete candor, honesty and openness in disclosing information in response to the questions presented on the Application, Phoenix issued life insurance policy number 97529709 (the "Policy") to the Joseph Trust, with an effective date of July 15, 2008. The Policy's death benefit is $10,000,000.

23.

Upon information and belief, contrary to the representations contained on the Application, Joseph did not have a net worth of $11,906,000 or other income of $497,000 on the date of the Application. In an effort to verify that the financial representations contained on the Application were true and correct, Phoenix sent letters to Joseph, the Trustee and the insurance agent who sold the Policy requesting documents that substantiated the financial representations that were made during the application process.

To date, Joseph, the Trustee and the insurance agent who sold the Policy have failed to adequately respond to Phoenix's requests.  Notwithstanding these requests, Phoenix's own independent investigation did not reveal any basis on which a person could reasonably conclude that Joseph had a net worth of $11,906,000 or other income of $497,000 on the date of the Application.  Phoenix asserts that the statements made during the application process with respect to Joseph's net worth, annual income and purpose for the life insurance were each materially incorrect and/or fraudulent.

24.

Had Joseph and the Joseph Trust provided accurate responses on the Application regarding these items, Phoenix would not have issued the Policy or would have done so on materially different terms.  As a result of the Policy's issuance, Phoenix has suffered damages, including but not limited to, commissions Phoenix paid to its sales representatives that it would not have paid but for the sale.

25.

Phoenix brings this action seeking rescission of the Policy and an order declaring the Policy void *ab initio*.

### V.     COUNT I – DECLARATORY JUDGMENT

26.

Phoenix incorporates herein each of its allegations contained in paragraphs 1–25 above.

27.

Pursuant to the Federal Declaratory Judgment Statute, 28 U.S.C. § 2201, Phoenix

seeks a declaratory judgment that the Policy is null, void and rescinded *ab initio* due to the fraudulent, willfully false and/or material misrepresentations and omissions that Joseph and the Joseph Trust made on the Application.

28.

Phoenix has been damaged as a result of the foregoing material misrepresentations, in that it has incurred expenses and costs in connection with, among other things, its underwriting and issuance of the Policy, payments of commissions and fees in connection with the issuance of the Policy, administration and servicing of the Policy, investigation of the misrepresentations and concealments detailed above, and commencement of this action to enforce its rights.

29.

In light of the foregoing damages, expenses, and costs incurred by Phoenix, Phoenix should be permitted to retain the premiums paid for the Policy as an offset against such damages and costs and/or disgorgement of Defendant's ill-gotten gains. Without such retention, offset, and/or disgorgement, restitution of the parties to their pre-contract positions would be impossible.

30.

Phoenix further asserts that due to Joseph and the Joseph Trust's fraud, the Joseph Trust is not entitled to a refund of the Policy's premiums.

31.

Notwithstanding the foregoing, Phoenix hereby fully and unconditionally tenders the Policy's premiums to the Court's registry.

32.

Phoenix also seeks recovery of its attorneys' fees pursuant to the Federal Declaratory Judgment Statute.

## VI.   CONCLUSION

WHEREFORE, due to the above-referenced fraudulent, willfully false and/or material misrepresentations, PHL Variable Insurance Company demands judgment against the 2008 Christa Joseph Irrevocable Trust as follows:

(a)   an order declaring and adjudging the policy of life insurance bearing Policy Number 97529709 to be null and void and rescinded, *ab initio*;

(b)   an order directing that Phoenix deposit with the Clerk of the Court all premiums paid on the Policy along with required interest, if any;

(c)   an order that the Clerk of the Court pay to Phoenix from any premiums deposited with the Court an amount equal to the premiums paid on the Policy or, alternatively, the total of: 1) the commissions paid by Phoenix to the agents or sales representatives arising out of or relating to the sale of the Policy; and 2) any damages incurred by Phoenix as a result of the Policy's issuance and subsequent investigation, including attorneys' fees and expenses; and

(d)   an order awarding cost of suit and reasonable attorneys' fees pursuant to the Federal Declaratory Judgment Statute and such other relief as the Court deems equitable and just to Phoenix.

| | |
|---|---|
| DATE: July 14, 2010 | DORSEY & WHITNEY, LLP |
| | |
| | By: ___s/Bryan C. Keane___<br>Stephen P. Lucke (Atty No. 154210)<br>Bryan Keane (Atty No. 0328716)<br>50 South Sixth Street, Suite 1500<br>Minneapolis, Minnesota 55402<br>Telephone: (612) 343-2600<br>lucke.steve@dorsey.com<br>keane.bryan@dorsey.com |

**ATTORNEYS FOR PLAINTIFF
PHL VARIABLE INSURANCE COMPANY**

OF COUNSEL:

EDISON, MCDOWELL & HETHERINGTON LLP

Thomas F.A. Hetherington
Texas Bar No. 24007359
Jarrett E. Ganer
Texas Bar No. 24055520
Allison M. Abel
Texas Bar No. 24030179
Phoenix Tower
3200 Southwest Freeway, Suite 2920
Houston, Texas 77027
Telephone: (713) 337-5580
Facsimile: (713) 337-8850
tom.hetherington@emhllp.com
jarrett.ganer@emhllp.com
allison.abel@emhllp.com